UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ASHER WORLDWIDE ENTERPRISES LLC, d/b/a RELIABUY.COM,<br><br>Plaintiff,<br><br>v.<br><br>SUR LA TABLE, INC., HOUSEWARESONLY.COM, and RESTARAUNTKITCHENWAREHOUSE.COM,<br><br>Defendants. | CASE NO. C11-1183MJP<br><br>ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER |

 This matter comes before the Court on Defendants' motion to dismiss, or, alternately, transfer, this action pursuant to Federal Rule 12(b)(2) for lack of personal jurisdiction and Federal Rule 12(b)(3) for improper venue. (Dkt. No. 11.) Having reviewed the motion, Plaintiff's opposition (Dkt. No. 13), and the remaining record, the Court GRANTS Defendants' motion and ORDERS the case TRANSFERRED to the Northern District of Illinois, Eastern Division. Because oral argument would not assist the Court in deciding this matter, the Court declines to hold oral argument.

**Background**

Plaintiff Asher Worldwide Enterprises LLC and Defendants Housewaresonly.com and Restaurantkitchenwarehouse.com are competitors in the market for selling kitchen supplies over the internet. (Dkt. No. 13 at 1.) Plaintiff claims that Defendants intentionally copied the descriptions, product feature listings, and other promotional materials that Plaintiff created for its website, and used these materials on their own websites without authorization. (Dkt. No. 1 at 3.) Plaintiff brings claims for copyright infringement under 17 U.S.C. § 501, for unfair competition and unfair business practices under the Lanham Act, 15 U.S.C. § 1125(a)(1), and for violation of the Washington Consumer Protection Act, RCW 19.86. (Dkt. No. 1 at 6-7.)

All parties agree that this suit was filed in the Western District of Washington by mistake, but they disagree over who caused the mistake. Plaintiff alleges that, in addition to copying materials from Plaintiff's website, Defendants also copied website content from another company, Sur La Table, Inc., leading Plaintiff to mistakenly assume that the Defendants were associated with Sur La Table. (Dkt. No. 13 at 4.) Plaintiff filed suit in this District because Sur La Table is domiciled in Seattle. (Id.)

However, after Sur La Table contacted Plaintiff and explained that it is not affiliated with the other two Defendants, Plaintiff voluntarily dismissed Sur La Table from this action, leaving only Defendants Housewaresonly.com and Restraurantkitchenwarehouse.com, which are both domiciled in Wilmette, Illinois. (Id. at 4; Dkt. No. 11 at 2-3.) Plaintiff Asher Worldwide Enterprises LLC is an Arizona LLC. (Dkt. No. 1 at 1.)

Defendants now move to dismiss or transfer this action for lack of personal jurisdiction and improper venue. (Dkt. No. 11 at 1.) Defendants assert that they have never had any offices in Washington, never owned or rented real property in Washington, never expressly directed their

business activity or advertising to Washington, never held any license issued by Washington, never operated a business in Washington, and never been subject to any taxation in Washington. (Id. at 4.) Defendants state that their sales to Washington State consumers amount to only 0.02 percent of Defendants' total nationwide sales. (Id.)

Plaintiff counters by asserting that Defendants do business in Washington, even if the extent is limited, and that this suit is therefore appropriate in this Court. (Dkt. No. 13 at 5-6.) Plaintiff also argues that it filed this case in this District because Defendants suggested "a false connection between themselves and Sur La Table," so "Defendants should not be heard to complain that it is 'unfair' for them to answer for their transgressions here." (Dkt. No. 13 at 7.)

**Discussion**

A. Improper Venue

Plaintiff moves to dismiss or transfer this case on two grounds: improper venue and lack of personal jurisdiction. Two separate statutory provisions govern the determination of venue in this case. Title 28, Section 1400(a) of the U.S. Code specifically authorizes civil actions "relating to copyrights" to be instituted "in the district in which the defendant or his agent resides or may be found." More generally, 28 U.S.C. § 1391(b)(1-2) provides in relevant part that a civil action not founded on solely on diversity may be brought in a judicial district "where any defendant resides" or "in which a substantial part of the events or omissions giving rise to the claim occurred." Id. Section 1391(c) provides that, for purposes of venue, a corporation "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Id.

Because both Defendants in this suit are corporations, Defendants "reside" in any district in which they are subject to personal jurisdiction. 28 U.S.C. § 1391(c). Therefore, the Court's

determination on whether Defendants are subject to personal jurisdiction in this District will also determine whether venue is proper in this District.

B. Personal Jurisdiction

To establish personal jurisdiction, both the requirements of the applicable state long-arm statute and federal due process requirements must be met. Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001). Washington's long-arm statute, RCW 4.28.185, extends jurisdiction to the limit of federal due process. Shute v. Carnival Cruise Lines, 113 Wn.2d 763, 771; 783 P.2d 78, 82 (1989). Therefore, the crucial question is whether federal due process requirements are met.

Constitutional due process concerns are satisfied when a nonresident defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional conceptions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 328 U.S. 310, 316 (1945). These minimum contacts must be such that a defendant "should reasonably anticipate being haled into court" in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). To establish minimum contacts, a Court must have either general or specific jurisdiction. Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996).

1. General Jurisdiction

General jurisdiction does not exist in this case. For general jurisdiction to exist over a nonresident defendant, the defendant must engage in "continuous and systematic general business contacts . . . that approximate physical presence in the forum state." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984) and Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000)). This is an exacting standard, "because a finding of

general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Schwarzenegger, 374 F.3d at 801.

Here, Plaintiff asserts that Defendants "actively seek and solicit orders from each state including the State of Washington." (Dkt. No. 13 at 6.) However, without allegations of specific business activities taking place in Washington, Plaintiff's activity of running a nationwide business that occasionally ships products to Washington does not constitute "continuous and systematic" general business contacts with Washington. Schwarzenegger, 374 F.3d at 801. In Schwarzenegger, the Ninth Circuit held that general jurisdiction did not exist in California, even where an Ohio company entered into contracts that included a California choice-of-law provision, retained the services of a California-based direct-mail marketing company, hired a sales training company incorporated in California, and operated a Website accessible in California. Id. at 801. In the present case, although Defendants have made some sales in Washington, those sales constitute only 0.02 percent of their total sales, and Defendants have no other business contacts with the state of Washington. (Dkt. No. 11 at 4.) Defendants' contacts with Washington therefore do not support general jurisdiction in Washington.

2. Specific Jurisdiction

In the absence of general jurisdiction, Plaintiff argues that Defendants are subject to specific jurisdiction, which allows a court to adjudicate claims that arise out of a defendant's contacts with the forum. (Dkt. No. 13 at 6.) The Ninth Circuit employs a three-prong test to determine whether a party has sufficient minimum contacts to be susceptible to specific jurisdiction: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or

relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. Schwarzenegger, 374 F.3d at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)).

In this case, purposeful direction, not purposeful availment, is the correct lens through which to analyze the first prong of the specific jurisdiction test. Though "purposeful availment" and "purposeful direction" are often clustered together, they are, in fact, two distinct concepts. See Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006). A purposeful availment analysis is used in suits sounding in contract, while a purposeful direction is the appropriate question in suits sounding in tort. Schwarzenegger, 374 F.3d at 802. Where the underlying action is based on a claim of copyright infringement, the Ninth Circuit has characterized the action as a tort and used the purposeful direction framework. See, e.g., Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010).

Purposeful Direction

Courts evaluate purposeful direction using the three-part test described by the Supreme Court in Calder v. Jones, 465 U.S. 783 (1984). Under the Calder test, purposeful direction exists when a defendant (1) commits an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)). In the present case, the parties do not dispute that the "intentional act" element is satisfied, because operating a website is an intentional act. (Dkt. No. 11 at 9.)

The second part of the Calder test, requiring that the defendant's conduct be expressly aimed at the forum, requires more detailed analysis, and ultimately weighs against the exercise of personal jurisdiction in this case. The Ninth Circuit has repeatedly held that maintenance of a

passive website alone cannot satisfy the express aiming prong. See Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418-20 (9th Cir. 1997). In the present case, Defendants operate active websites; that is, they actively sell goods to customers in all fifty states via their website. (Dkt. No. 13 at 6.) However, the fact that Defendants' website is active does not alone satisfy the express aiming prong.

Even though Defendants' websites may be active, the fact that Plaintiffs' claim centers on copyright infringement, not a specific transaction conducted via the websites, weighs in favor of the Court requiring "something more" in order to find express aiming. In Brayton Purcell, the plaintiff, a California law firm, alleged that the defendant, a competitor law firm, willfully made commercial use of its proprietary website content, thereby placing it in competition with plaintiff in the field of elder abuse law. 606 F.3d at 1129. The Ninth Circuit held that the plaintiff met the requirement of showing "something more" by alleging that the defendant engaged in "individualized targeting." 606 F.3d at 1129. Specifically, the Ninth Circuit held that individualized targeting had occurred because defendant "knew [plaintiff] to be a resident of the Forum," and had deliberately sought to harm plaintiff's business in the forum. Id. Similarly, in Panavision Int'l v. Toeppen, the Ninth Circuit held that the defendant, a cybersquatter, engaged in "individualized targeting" because, in addition to registering the plaintiff's trademark as part of a domain name, defendant sent a letter to plaintiff in the forum state demanding payment. 141 F.3d 1316, 1321 (9th Cir. 1998).

In the instant case, Plaintiff is not a resident of Washington—it is an Arizona resident—and Plaintiff does not allege that Defendants specifically sought to harm its business interests in Washington. (Dkt. No. 11 at 2.) Plaintiff also does not allege that Defendants sent any communications to them in Washington which formed the basis of this action. (Id.) Instead, all

1 parties acknowledge that suit was brought here because Plaintiff incorrectly assumed that
2 Defendants were associated with a third party, Sur La Table. (Dkt. No. 13 at 7.) The fact that
3 Defendants may be responsible for Plaintiff's mistake does not affect the Court's analysis of
4 whether Defendants engaged in express aiming.

5 The instant case is more analogous to Pebble Beach and Schwarzenegger, where the
6 Ninth Circuit found that personal jurisdiction did not exist because the defendants' actions were
7 not expressly aimed at the forum. In Pebble Beach, California's Pebble Beach golf resort sued
8 the defendant, who operated a bed and breakfast called "Pebble Beach" in Southern England, for
9 trademark infringement. 453 F.3d at 1154. The Ninth Circuit held that, even though the
10 defendant had lived in California and had knowledge of the Pebble Beach golf resort,
11 defendant's knowledge of any foreseeable effects did not constitute an independent act that was
12 expressly aimed at California. Id. at 1159. In Schwarzenegger, the movie star and former
13 California governor brought an action in California alleging that an Ohio car dealership
14 impermissibly used his "Terminator" image in a newspaper advertisement in Ohio. 374 F.3d at
15 800. In that case, the Ninth Circuit found that any foreseeable harm in California was not enough
16 to support personal jurisdiction, because the advertisement at issue was expressly aimed at Ohio,
17 not at California. Id. at 807. In the present case, Plaintiff does not allege that Defendants took
18 any independent act that was aimed at Washington. (Dkt. No. 11 at 10.) While Plaintiff alleges
19 that Defendants had knowledge of harms it would suffer in Washington, it does not allege that
20 Defendants' actions were expressly aimed at the forum. (Id.)

21 The extremely small percentage of Defendants' nationwide sales that occur in
22 Washington—0.02 percent—also weighs against finding that Defendants conduct was expressly
23 aimed at Washington. (Dkt. No. 11 at 4.) While Defendants' commercial activity is relevant to
24

this analysis, all commercial activity is not created equal. The Ninth Circuit has held that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." <u>Cybersell</u>, 130 F.3d at 419 (internal citations omitted). Here, while Defendants' sales in Washington weigh in favor of the Court finding express aiming, the extremely small percentage of sales occurring in this District undermines the exercise of personal jurisdiction over Defendants.

The final element of the <u>Calder</u> test requires that the defendant knows that its conduct was likely to cause harm that would be suffered by plaintiff in the forum. <u>Brayton Purcell</u>, 606 F.3d at 1131. In <u>Brayton Purcell</u>, the Ninth Circuit clarified that this element does not require that the "brunt" of the harm be suffered in the forum, and that this element may be established even if "the bulk of the harm" occurs outside the forum. <u>Id.</u> (internal citations omitted). In <u>Brayton Purcell</u>, the Ninth Circuit found that, because the defendant knew that plaintiff resided in the forum, it was foreseeable that harm would be suffered in the forum, even if the bulk of the harm was not there. <u>Id.</u> In the instant case, Plaintiff does not reside in the forum, but rather in Arizona. While it may have been foreseeable that plaintiff may suffer some harm from diminished sales in Washington as a result of Defendants' alleged infringement, Plaintiff does not allege that Defendants intended specifically to harm its sales in Washington. Without a more direct connection, the third prong of the <u>Calder</u> test does not support a finding of purposeful direction.

<u>Claim Arising From Forum-Related Activities</u>

The second prong of the three-prong test to establish specific jurisdiction requires that the claim at issue arise out of or relate to the defendant's forum-related activities. The Ninth Circuit

applies a "but for" causation standard to this analysis. Bancroft & Masters, 223 F.3d at 1088. In Bancroft & Masters, the Ninth Circuit held that this prong was satisfied because, but for the defendant's initiating of proceedings against plaintiff forcing it to choose between bringing suit and losing the use of its website, the claim would not have arisen. Id. Here, there is no analogous "but for" relationship. Plaintiff asserts that "displaying the infringing website pages to Washington residents and accepting orders placed by such residents" constitutes the requisite connection. (Dkt. No. 13 at 7.) Plaintiff further argues that "verification of such copying was conducted by [Plaintiff's] undersigned counsel in Washington through inspection of Defendants' websites." (Id.) However, simply noticing in Washington that infringement has occurred is not sufficient to show that the claim arose out of the Defendants' forum-related activities. In the absence of specific factual allegations showing that part of the events giving rise to Plaintiff's claim occurred in Washington, the second prong is not satisfied.

Fair Play and Substantial Justice

The third prong of the test to establish specific jurisdiction, requiring that the exercise of jurisdiction comport with fair play and substantial justice, is also not satisfied here. Schwarzenegger, 374 F.3d at 802. The Ninth Circuit has outlined seven factors to consider in determining whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice, including (1) the extent of the purposeful interjection; (2) the burden on the defendant to defend in the chosen forum; (3) the extent of the conflict with the sovereignty of defendant's state; (4) the forum state's interest in the dispute; (5) the most efficient forum for judicial resolution of the dispute; (6) the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. CE Distrib., LLC v. New Sensor Corp., 380 F.3d 1107, 1112 (9th Cir. 2004).

A majority of these factors weigh against the Court exercising personal jurisdiction in this case. Given that only 0.02 percent of Defendants' sales occur in Washington, the extent of any purposeful interjection in Washington is minimal and the burden on the defendant to defend in Washington is relatively high. The third and fourth factors are neutral in this analysis, because there is no evidence that either Washington or Illinois have any particular interest in the resolution of this dispute between private parties, which centers mainly on alleged violations of federal copyright law. The sixth factor weighs in favor of transfer, because Plaintiff does not argue that it has a strong interest in litigating in Washington; indeed, Plaintiff admits it filed here by mistake. (Dkt. No. 13 at 7.) The seventh factor also weighs in favor of transfer, because there is no indication that litigating in Illinois would be significantly more difficult for Plaintiff, an Arizona resident, than litigating in Washington. In sum, the exercise of personal jurisdiction by this Court does not comport with established principles of fair play and substantial justice.

C.  Transfer

Because Plaintiff does not allege facts to support a finding of minimum contacts to support specific jurisdiction over Defendants, the Court does not have personal jurisdiction over Defendants. Because personal jurisdiction does not exist, the Defendant corporations do not "reside" in this District, so venue is improper. 28 U.S.C. § 1391(c).

When venue is improper in the court in which a case was brought, a court may transfer the case to another court if the proposed transferee court is one in which the action could have been brought and transfer is in the interest of justice. 28 U.S.C. § 1406(a). Ordinarily, "transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time consuming and justice-defeating." Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962). That is the case here. Because Defendants are both domiciled in the Northern

District of Illinois, the case could have been brought there, so it is appropriate for this Court to transfer the case there.

## Conclusion

Because Defendants do not have minimum contacts with this District, this Court does not have personal jurisdiction over Defendants. Additionally, because this court does not have personal jurisdiction over Defendants, the Defendant corporations do not "reside" in this District, so venue is also improper. Because dismissal would be justice defeating, the Court TRANSFERS the case to the Northern District of Illinois, Eastern Division.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 10th day of January, 2012.

Marsha J. Pechman
United States District Judge